[No. 70102-4. En Banc.]
Argued June 14, 2001. Decided October 4, 2001.

SALVADOR DELGADO GUIJOSA, ET AL., *Petitioners*, v. WAL-MART STORES, INC., ET AL., *Respondents*.

*Timothy K. Ford* (of *MacDonald, Hoague & Bayless*) and *Robert D. Wilson-Hoss* (of *Hoss & Wilson-Hoss*), for petitioners.

*D. Michael Reilly*, *Michael B. King*, and *Steven D. Jensen* (of *Lane Powell Spears Lubersky, L.L.P.*), for respondents.

IRELAND, J. — Petitioners sought review of the Court of Appeals' decision affirming the trial court's judgment in favor of Wal-Mart as to claims of discrimination, malicious prosecution, false imprisonment, battery, and violations of the Consumer Protection Act, chapter 19.86 RCW. At issue is whether the trial court correctly granted a motion for judgment as a matter of law, setting aside the jury's verdict, on the claim of Consumer Protection Act violations. The record does not contain substantial evidence to sustain the jury's verdict that Wal-Mart violated the Consumer Protection Act. Therefore, judgment as a matter of law setting aside the jury's verdict was correctly granted, and we affirm the Court of Appeals' ruling.

## FACTS

On March 16, 1995, Salvador Delgado Guijosa (Delgado), Rogelio Hernandez Guijosa (Guijosa), and Ricardo Hernandez (Hernandez)[1] went to the Wal-Mart store in Shelton, Washington to shop for school clothes for Hernandez, who was a high school student.

In the store, the men noticed a display bin of baseball hats priced at $2.50 each. Trial testimony conflicted about whether Delgado and Guijosa were wearing hats when they entered the Wal-Mart store. A store sales associate testified that when the trio approached the bin, only Hernandez was wearing a hat, but that when they walked away from the bin, they each wore a hat. The men testified that all three of them had worn hats into the store. They tried on hats from the bin, and Delgado decided to buy two of them.

---

[1] Guijosa and his younger brother Hernandez are the nephews of Delgado.

After Delgado paid for the two hats at the checkstand and before the men left the store, they were stopped by Rhonda Liburdi (Liburdi), a loss prevention associate for Wal-Mart.[2] Liburdi, who had been observing the men since they entered the store, accused them of taking the hats they were wearing without paying for them.

Liburdi asked David Opfer (Opfer), another Wal-Mart employee, to assist her. Liburdi and Opfer escorted the three men to the back office area of the store, and Liburdi took the hats the men had been wearing. Guijosa, the only one of the three who spoke English well, told Liburdi that the hats were theirs and that the hat his brother had been wearing was a type not sold at Wal-Mart.

The parties agree that they had difficulty communicating with one another. Guijosa testified that he tried to explain to Liburdi that he had bought the hat Delgado was wearing some weeks earlier and that he had purchased the hat he was wearing at Wal-Mart the previous day. When Liburdi asked for identification, Guijosa declined and advised the other two men not to provide information except to the police.

Liburdi contacted the Shelton Police Department. Officer Michael Hudnell (Hudnell) responded and spoke with the parties. Liburdi told Hudnell that she had seen Guijosa remove the price tag and place one of the store's hats on his head.[3] She stated that the hat worn by Delgado was also taken without being purchased.

Hudnell found the three men cooperative. Based on Liburdi's allegations, Hudnell wrote citations for theft to Delgado and Guijosa. Hernandez was not cited, and his hat

---

[2] Liburdi is now deceased.

[3] Liburdi testified at trial that she had located the price tag while the men were detained and that she had shown it to Guijosa and Hudnell. However, it was not labeled as evidence or listed on Hudnell's property narrative report. Hudnell testified that he did not remember seeing any price tags. Guijosa testified that he had not removed a price tag.

was returned to him.[4] Liburdi "trespassed" all three men, banishing them from the Wal-Mart store.

Liburdi testified at trial that she had completely forgotten whatever she had done to review the store's videotapes of the alleged shoplifting incident and that the tapes had been recycled. Plaintiffs claim a sign was posted stating it was store policy that such tapes would be used as evidence in criminal prosecutions. However, the sign was not admitted in evidence, and no evidence was presented as to what the sign actually said.

Guijosa located the receipt for the hat he said was purchased the day before the alleged shoplifting incident.[5] Following two court appearances, the theft charges against Delgado and Guijosa were dismissed with prejudice.

## PROCEDURAL HISTORY

Delgado, Guijosa, and Hernandez (plaintiffs) then filed a civil complaint against Wal-Mart Stores, Inc., Liburdi, and Opfer (collectively, Wal-Mart), alleging assault and battery, false imprisonment, malicious prosecution, deprivation of civil rights, and violations of the Washington Consumer Protection Act (CPA). Wal-Mart denied all claims.

The case was tried in Mason County Superior Court on August 24-28, 1998. The 12-member jury found that Wal-Mart proved by a preponderance of the evidence that they detained the plaintiffs for a reasonable time and on reasonable grounds. Therefore, Wal-Mart was allowed to assert the shopkeeper's privilege under RCW 4.24.220, and the jury found for Wal-Mart on the false imprisonment and battery claims. The jury also found for Wal-Mart on the malicious prosecution claim.

In addition, the jury found that Wal-Mart did not dis-

---

[4] At trial, Liburdi denied that Hernandez had been apprehended. However, Hudnell testified that he understood that all three men had been detained, and that Liburdi only later became convinced that the hat Hernandez had been wearing was not store property.

[5] Liburdi asserted that the men had stolen the hats even after the receipt was produced. It was shown that the hat she confiscated from Delgado was soiled and worn.

criminate against the plaintiffs. Finally, it found that Wal-Mart did violate the CPA with respect to Delgado and Guijosa.[6]

After the verdicts were read, the court sent the jury back to the jury room. Plaintiffs' counsel initially stated that the verdicts regarding the claims of discrimination and violation of the CPA were not inconsistent. Wal-Mart's counsel asserted that the verdicts were inconsistent and argued that the remedy should be a judgment notwithstanding the verdict on the CPA claim. Plaintiffs' counsel stated that any objections to the verdict as inconsistent would be waived by a failure to reconcile the verdict before the jury was discharged. After both parties declined the court's offer to allow reargument, the court discharged the jury.

Wal-Mart subsequently filed a motion for judgment as a matter of law under CR 50(b), asserting that without a finding of discrimination, there was insufficient evidence to find violations of the CPA.

The trial court granted Wal-Mart's motion, setting aside the jury's verdict on the CPA claim, and commented as follows:

> It is this Court's view that having tried the case and listened to the evidence being produced that I cannot find that there is sufficient evidence presented by the Plaintiff to support the determination that there was a violation of the Consumer Protection Act, given the determination that there was no discrimination practiced against the [Plaintiffs], and that the [Defendants] had been justified by the Statutory defense in taking the actions that they had.

> It would be my impression that the jurors were dissatisfied with the statements of Ms. Liburdi. And I agree that there were substantial inconsistencies developed by the Plaintiff throughout regarding Ms. Liburdi's positions, plural, that had been taken.

---

[6] The parties stipulated as to damages on the CPA claim. In closing argument, plaintiffs' counsel pointed out that the jury was not being asked to determine damages in the CPA claim; he stated that CPA damages are limited to property and "all we're asking under the Consumer Protection Act is to give them their hats back." Suppl. Partial Report of Proceedings at 68. A prevailing plaintiff in a CPA claim is entitled to costs and attorney fees. RCW 19.86.090.

> However, those questions of evidence produced by the Plaintiffs do not give rise to sufficient facts to support a finding that the Consumer Protection Act was violated, and that deceptive acts had been practiced that were capable of deceiving a substantial portion of the public, thus [a]ffecting the public interest. . . .

Clerk's Papers (CP) at 13-15; Excerpt of Report of Proceedings (RP) at 670.

In its Order Granting Defendants' Motion for Judgment as a Matter of Law, the trial court made findings, including the following:

> 4. There was no evidence to support a verdict against defendants for Consumer Protection Act violation in the absence of a "per se" violation which would have required a finding of discrimination. Specifically, in the absence of a "per se" violation, there was no evidence to establish "the defendant engaged in an unfair and deceptive act or practice" or "that the act or practice affected the public interest."
>
> 5. As a matter of law, neither the evidence presented nor any reasonable inference from the evidence supports the jury's verdict finding a Consumer Protection Act violation by defendants.

CP at 14-15.

Judgment was entered in favor of defendants on all claims.

Plaintiffs appealed the trial court's judgment, and the Court of Appeals affirmed the judgment in all respects. *Guijosa v. Wal-Mart Stores, Inc.*, 101 Wn. App. 777, 6 P.3d 583 (2000).

This Court then granted plaintiffs' petition for review of the Court of Appeals' decision. *Guijosa v. Wal-Mart Stores, Inc.*, 142 Wn.2d 1016, 16 P.3d 1263 (2001).

## ANALYSIS

Judgment as a Matter of Law

■ CR 50(a)(1) provides as follows regarding motions for judgment as a matter of law:

If, during a trial by jury, a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find or have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against the party on any claim . . . that cannot under the controlling law be maintained without a favorable finding on that issue.

Motions for directed verdict and motions for judgment notwithstanding the verdict were renamed "motions for judgment as a matter of law" effective September 17, 1993. *Litho Color, Inc. v. Pac. Employers Ins. Co.*, 98 Wn. App. 286, 298 n.1, 991 P.2d 638 (1999).

Standard of Review

■ "Granting a motion for judgment as a matter of law is appropriate when, viewing the evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party." *Sing v. John L. Scott, Inc.*, 134 Wn.2d 24, 29, 948 P.2d 816 (1997). "Such a motion can be granted only when it can be said, as a matter of law, that there is no competent and substantial evidence upon which the verdict can rest." *State v. Hall*, 74 Wn.2d 726, 727, 446 P.2d 323 (1968). "Substantial evidence is said to exist if it is sufficient to persuade a fair-minded, rational person of the truth of the declared premise." *Brown v. Superior Underwriters*, 30 Wn. App. 303, 306, 632 P.2d 887 (1980).

■ When reviewing a motion for judgment notwithstanding the verdict (judgment as a matter of law), this Court applies the same standard as the trial court. *Goodman v. Goodman*, 128 Wn.2d 366, 371, 907 P.2d 290 (1995).

Jury Instructions

Based on the Washington Law Against Discrimination, chapter 49.60 RCW, the jury was instructed regarding the plaintiffs' discrimination claim as follows:

Instruction No. 20

On their claims of unlawful discrimination, each plaintiff has the burden of proving each of the following propositions as to each defendant:

First, that the defendant denied the plaintiff the right to full enjoyment of the accommodations, advantages, facilities, or privileges of the Wal-Mart Store;

Second, that the defendant did so on the basis of race, color or national origin.

Third, that the defendant's actions caused injury or damage to the plaintiff.

Instruction No. 21

The denial of public accommodations on the basis of race, color or national origin occurs when race, color or national origin is a significant or substantial factor in the defendant's decision to deny the plaintiff the full enjoyment of a public accommodation. Plaintiff does not have to prove that race, color or national origin was the only factor or the main factor in the decision, or that plaintiff would not have been denied full enjoyment of the accommodations but for his race, color or national origin.

Instruction No. 22

A violation of the law against discrimination in public accommodations is an unfair or deceptive act or practice in the conduct of the defendant's trade or commerce. A violation of this statute also affects the public interest. The law against discrimination provides in relevant part as follows:

The right to be free from discrimination because of race, creed, color, national origin . . . is recognized as and declared to be a civil right. This right shall include . . . [t]he right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort . . . .

With respect to this statute, the state legislature has declared as follows:

practices of discrimination against any of its inhabitants because of race, creed, color, national origin, . . . are a matter

of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state.

If you find that a violation of this statute has occurred, therefore, you must find that the first three elements of a Consumer Protection Act violation have been proved.

CP at 206-08; RP at 624-25.

■ Washington's CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. RCW 19.86.020. To establish a claim for violation of the CPA, a private plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in the conduct of trade or commerce, (3) impacting the public interest, and (4) proximately causing injury to the plaintiff in his or her business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785-93, 719 P.2d 531 (1986).

Jury Instruction 23 tracks the *Hangman Ridge* elements:

Instruction No. 23

On their claim of a Consumer Protection violation each plaintiff has the burden of proving each of the following propositions with respect to each defendant:

First, that the defendant engaged in an unfair and deceptive act or practice;

Second, that the act or practice occurred in the conduct of defendant's trade or commerce;

Third, that the act or practice affected the public interest;

Fourth, that the plaintiff was injured in either his business or his property; and

Fifth, that the defendant's act or practice was a proximate cause of plaintiff's injury.

CP at 209; RP at 625.

■ The parties did not object to the jury instructions. RP at 616. Instructions to which no exceptions are taken become the law of the case. *Ralls v. Bonney*, 56 Wn.2d 342, 343, 353 P.2d 158 (1960).

Jury Instruction 20 provides the elements necessary to find Wal-Mart liable for discrimination. Jury Instruction 22 states that if the jury finds Wal-Mart liable for discrimination, then the first three elements of a claim for violation of the CPA are satisfied. Finally, in Jury Instruction 23, the elements necessary to find a violation of the CPA are set out.

Verdict Form and General Verdicts

The verdict form in this case contains yes/no questions, which are to be answered by the jury, about each of the plaintiffs' claims. The questions ask whether the defendants are liable under each claim, i.e., whether the defendants falsely imprisoned the plaintiffs, whether the defendants committed battery or malicious prosecution, whether the defendants discriminated against the plaintiffs, and whether the defendants violated the CPA.

The Court of Appeals states that " 'answers to interrogatories are the jury's findings of fact' " and treats the answers to the discrimination questions as a special verdict. *Guijosa v. Wal-Mart Stores, Inc.*, 101 Wn. App. at 800 (quoting 14 Lewis H. Orland & Karl B. Tegland, Washington Practice: General Verdicts With Interrogatories § 289(6) (1996)). However, the answers actually resolve the ultimate questions on the discrimination and CPA claims. Therefore, the jury's answers in both claims constitute general verdicts because "the jury pronounces generally upon all or any of the issues in favor of either the plaintiff or defendant." CR 49.

In its general verdicts, the jury answered "no" as to whether the defendants discriminated against the plaintiffs and "yes" when asked whether the defendants had violated the CPA. CP at 181-82.

Discrimination Claim

Plaintiffs contend that the trial court erred because its ruling was premised on a determination that there was no discrimination practiced against the plaintiffs. However,

based on the language of the verdict form, there can be no other reasonable interpretation:

V. <u>Discrimination</u>

Did the following defendants discriminate against Salvador Delgado Guijosa:

a. Rhonda Liburdi Yes _____ No __X__
b. Wal-Mart Stores, Inc. Yes _____ No __X__

If your answer to either of the above questions is "yes," state the amount of compensatory damages you award to Salvador Delgado Guijosa on his claim of discrimination:

$ _____

Did the following defendants discriminate against Rogelio Hernandez Guijosa:

a. Rhonda Liburdi Yes _____ No __X__
b. Wal-Mart Stores, Inc. Yes _____ No __X__

If your answer to either of the above questions is "yes," state the amount of compensatory damages you award to Rogelio Hernandez Guijosa on his claim of discrimination:

$ _____

Did the following defendants discriminate against Ricardo Hernandez:

a. Rhonda Liburdi Yes _____ No __X__
b. Wal-Mart Stores, Inc. Yes _____ No __X__

If your answer to either of the above questions is "yes," state the amount of compensatory damages you award to Ricardo Hernandez on his claim of discrimination:

$ _____

CP at 181-82.

The jury determined that the defendants categorically did not discriminate against any of the plaintiffs. Consistent with this verdict, no compensatory damages were awarded. Plaintiffs argue that the instructions permit the jury to find discrimination apart from the law against discrimination in public accommodations. The argument ignores the unrestricted language of Verdict V, which finds no discrimination *of any kind* by Wal-Mart.

Violations of the Consumer Protection Act

 After the jury found no discrimination, the verdict form next directed consideration of the CPA claim. Under Jury Instruction 22, a finding of discrimination by Wal-Mart would satisfy the first three elements of a claim for violation of the CPA. The Court of Appeals concluded that the jury could find a violation of the CPA only if it also found Wal-Mart liable for discrimination. However, the instructions do not limit the jury to finding a CPA violation only if it also finds discrimination. Rather, if there were facts in evidence of other acts or practices, the jury could have considered all of the propositions set out in Jury Instruction 23 (the *Hangman Ridge* elements) in relation to such acts or practices. The jury's verdict of CPA violations was determinable separately from its verdict that Wal-Mart did not discriminate. The general verdicts on the two claims are independent; they are not inconsistent:

VI. <u>Violation of the Consumer Protection Act</u>

Did Rhonda Liburdi or Wal-Mart Stores, Inc. violate the Consumer Protection Act with respect to Salvador Delgado Guijosa:

Yes <u> X </u> No <u> </u>

Did Rhonda Liburdi or Wal-Mart Stores, Inc. violate the Consumer Protection Act with respect to Rogelio Hernandez Guijosa:

Yes <u> X </u> No <u> </u>

CP at 182.

Plaintiffs assert that the failure to object to an alleged inconsistency in verdicts before the jury is discharged waives any later argument based on that inconsistency. However, the rule requiring a party to bring inconsistent verdicts to the court's attention does not apply in this case because the jury's general verdicts are not inconsistent.

"For a general verdict, '[t]he determinative issue is whether there was evidence or reasonable inferences arising therefrom to sustain a verdict in plaintiff's favor.'" *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121,

131, 875 P.2d 621 (1994) (quoting *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 261, 840 P.2d 860 (1992)). Wal-Mart properly brought its motion for judgment as a matter of law to challenge the validity of the jury's general verdict that Wal-Mart violated the CPA, arguing that there was insufficient evidence to support that verdict.

The trial court found that neither the evidence in the record nor any reasonable inference from that evidence satisfied all of the *Hangman Ridge* elements. We agree.

■■ The first element requires that a defendant be engaged in "an unfair and deceptive act or practice." Plaintiffs did not allege or prove any act or practice, other than discrimination, that violated the CPA. Although the jury was free to determine what could constitute an unfair and deceptive act or practice, there was simply none asserted or claimed, other than discrimination. Plaintiffs suggest that the deceptiveness of witnesses testifying for Wal-Mart could have constituted an unfair or deceptive practice. However, the act or practice must relate to out-of-court conduct. Lies during court testimony about prior events, while reprehensible, would not constitute a CPA violation. Rather, intentional lies under oath could result in a charge of perjury. In addition, plaintiffs claim that a posted notice stated it was store policy to use videotapes as evidence in criminal prosecutions, and this notice constituted a deceptive act or practice. There was no evidence as to what the notice actually said. In addition, there was no evidence of a pattern or practice of withholding such video evidence. Therefore, this claim is not supported by substantial evidence in the record.

■ Given that the jury accepted the shopkeeper defense and found for defendants on all of the conduct claimed to be unfair and deceptive, plaintiffs presented no evidence, absent discrimination, to prove the third element—that defendants' act or practice impacted the public interest. Even in closing argument, counsel for plaintiffs spoke only of discrimination with regard to the CPA:

The next claim, discrimination. I've talked to you about that. And the final claim is a violation of the Consumer Protection Act. And the Instructions tell you on that that in this case that means discrimination. If there's discrimination by any Wal-Mart employee, that's a violation of the Consumer Protection Act.

Suppl. Partial Report of Proceedings at 67.

█ The jury's determination of no discrimination eliminated the only basis presented by plaintiffs at trial for finding such a violation, and "a verdict cannot be founded on mere theory, speculation or conjecture." *Lamphiear v. Skagit Corp.*, 6 Wn. App. 350, 356, 493 P.2d 1018 (1972).

## CONCLUSION

The record presents no substantial evidence or reasonable inference to support the jury's verdict that Wal-Mart violated the CPA. Therefore, the trial court correctly granted judgment as a matter of law, setting aside that verdict. We affirm the Court of Appeals' ruling that Wal-Mart's motion for judgment as a matter of law on the CPA claim was correctly granted.

ALEXANDER, C.J., and SMITH, JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, and OWENS, JJ., concur.