# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| KEY PROPERTY SERVICES, INC., | No. 58827-7-II |
| Respondent, | |
| v. | |
| MARGERY P. BURNETT; and all other persons occupying 520 NW 12th Avenue, #A-203, Battle Ground, WA, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – Margery Burnett appeals the trial court's judgment based on a jury verdict in an unlawful detainer action. On March 25, 2023, Burnett made a comment to another resident at her apartment complex about his smoking. Key Property Services, Inc. (Key), Burnett's landlord, served Burnett with a 10-day notice to comply or vacate, alleging that Burnett violated the quiet enjoyment provision of her lease by verbally harassing a tenant of the apartment complex on March 25, 2023. When Burnett allegedly made negative comments to another neighbor in May 2023, Key filed a complaint for unlawful detainer.

At trial, the evidence showed that all Burnett said to the other resident was, "Were you out there smoking?" and "Do you know what that does to you?" while gesturing toward her chest. Report of Proceedings (RP) at 96. The jury found Burnett liable for unlawful detainer.

The trial court then entered a judgment entitled "Stipulated Judgment and Order for Writ of Restitution" that both parties signed.

Burnett argues that there was insufficient evidence to support the jury's verdict. Key disagrees, and also argues that Burnett forfeited her right to appeal her liability for unlawful detainer by entering into the stipulated judgment.

We hold that (1) the stipulated judgment is appealable because Burnett contested her liability for unlawful detainer at trial, and (2) there is insufficient evidence to support the jury's verdict finding Burnett liable for unlawful detainer.[1] Accordingly, we reverse the trial court's judgment, and we remand for the trial court to vacate the judgment and dismiss Key's unlawful detainer complaint.

FACTS

In 2014, Burnett began leasing an apartment at Mill Creek Senior Estates in Battle Ground. Key was the landlord. Section 22 of Burnett's lease states in part, "Each Resident is responsible for his/her own conduct, as well as that of the other Residents in the unit and their guests. Noisy or other conduct that disturbs the quiet enjoyment of any other resident or drunk or disorderly conduct will not be permitted at any time." Clerk's Papers (CP) at 10.

*Unlawful Detainer Action*

In April 2023, Key served Burnett with a 10-day notice to comply or vacate. The notice stated that on March 25, 2023, Burnett verbally harassed another tenant regarding smoking, which violated section 22 of the lease. The notice stated that Burnett could remedy the breach by not using harassing language or profanities and allowing for "peaceful enjoyment of the

---

[1] Burnett also argues that the trial court erred in admitting evidence of Burnett's prior bad acts of harassing tenants before the March 2023. Because we reverse on other grounds, we do not address this argument.

2

community and common areas by others." CP at 12. The notice further stated that Burnett must remedy the breach or vacate the premises by April 18.

Key filed an unlawful detainer complaint against Burnett in May 2023, alleging that Burnett failed to comply with the 10-day notice or vacate the premises. Burnett denied the allegation that she violated the lease. The case was set for a jury trial.

Before trial, Burnett filed a motion in limine to exclude alleged incidents of harassment and testimony from neighboring tenants about conduct other than the incidents described in the notice or to have occurred on May 22, 2023. She argued that the testimony was improper character evidence under ER 404(a), inadmissible prior bad acts under ER 404(b), or should be excluded under ER 403. The trial court admitted the evidence of prior incidents for a limited purpose and stated that the parties could offer a limiting instruction.

*Jury Trial*

At trial, William Guiel testified that he moved into Burnett's apartment complex in 2020 and that he used the building's designated smoking area. He stated that Burnett would walk by the smoking area and would laugh at people using it or share her opinions on smoking. This occurred approximately once a week during his first year living at the apartment complex.

Guiel described that on March 25, 2023, he returned to his apartment from the designated smoking area when Burnett approached him. Burnett stated, "Were you out there smoking?" and "Do you know what that does to you?" while gesturing toward her chest. RP at 96. He did not say anything about Burnett's demeanor or tone of voice. Guiel testified that he felt harassed by Burnett's behavior and that it interfered with his quiet enjoyment of the property.

Guiel also described how Burnett would look at the designated smoking area and roll her eyes or intentionally avoid riding in the elevator with other tenants. He did not "look forward to

3

seeing [Burnett] out and about." RP at 98. He stated that Burnett was always negative because of Guiel's smoking. He eventually reported the incidents to property management.

April Gray, Burnett's next door neighbor, testified that all of her interactions with Burnett for the six years she lived in her apartment were negative. She testified that Burnett made statements to people in the smoking area such as "You filthy dopers. You need to get out of here. You don't belong here." RP at 103. Gray also testified that on May 22 Burnett yelled out her window and "[did] the usually filthy, doper routine thing." RP at 110.

April Gray's husband Rusty Gray also testified. He lived with Gray next door to Burnett. Rusty[2] testified that there had been 20 to 25 interactions with Burnett, usually consisting of her yelling "Filthy dopers" or "You need to get out of here. Scum." RP at 114. Rusty further testified that on May 22, 2023, he was in the designated smoking area. Burnett yelled out her window, "Filthy dopers," "You need to get out of here," and "You need to go to rehab." RP at 118.

Dee Matison was an assistant manager of Burnett's apartment complex for Key. Matison stated that Key had many issues with Burnett's behavior. Burnett routinely complained about individuals in the designated smoking area. Burnett left harassing messages on the property management answering machine. Matison testified that Key served Burnett with the 10-day notice to comply or vacate on April 4, 2023. She then stated that Burnett violated the lease again on May 22 and 25, 2023 due to complaints from the Grays about harassing behavior.

The trial court instructed the jury that it must find for Key if it found that Burnett (1) committed a substantial breach of a material term of the lease agreement; and (2) following

---

[2] Because of the shared last name of April and Rusty Gray, we refer to Rusty by his first name in this opinion because he testified after April Gray. No disrespect is intended.

4

service of the 10 day notice to comply or vacate, Burnett committed the same breach between April 18 and June 18, 2023. The jury instructions stated that "substantial" means "significant or large and having substance." CP at 43. Jury instruction 7 stated,

> Certain evidence has been admitted in this case for only a limited purpose. This evidence consists of testimony about Defendant's actions prior to March 25th, 2023. *This evidence may not be considered by you as evidence that Defendant violated her lease on March 25th, May 22nd, and/or May 25th.* Any discussion of the evidence during your deliberations must be consistent with this limitation.

CP at 44 (emphasis added).

The jury found Burnett liable for unlawful detainer. The trial court then entered a judgment entitled "Stipulated Judgment and Order for Writ of Restitution." CP at 46. The judgment ordered Burnett to pay approximately $11,000 in back rent, attorney fees, and other fees, and issued a writ of restitution for Burnett's apartment. Both Key and Burnett's attorney signed the judgment as "Presented by" both parties. CP at 48.

Burnett appeals the trial court's judgment.

## ANALYSIS

### A. APPEALABILITY OF JUDGMENT

Key argues that the trial court's judgment and order for writ of restitution is not appealable because the judgment was stipulated. Burnett argues that the trial court's judgment was "stipulated" only insofar as it agreed on the amount of damages and restitution, making it appealable with respect to Burnett's liability. We agree with Burnett.

In general, judgments agreed upon by the parties before a determination of liability are not appealable. *See, e.g.*, *Copper Leaf, LLC v. Ace Paving Co., Inc.*, 31 Wn. App. 2d 726, 744, 553 P.3d 111 (2024) (holding that a confession of judgment is not appealable absent fraud, mistake, or lack of jurisdiction); *Dep't of Ecology v. Tiger Oil Corp.*, 166 Wn. App. 720, 750,

271 P.3d 331 (2012) (holding that a settlement that resolved all claims and defenses may not be appealed).

Here, Burnett did not settle her claim with Key before trial; she went to trial on the issue of liability for unlawful detainer. The record is not clear as to what exactly was stipulated in the judgment. But there was no clear waiver of the right to appeal in the stipulation. The jury found Burnett liable for unlawful detainer, and therefore it appears that the stipulation related to the remedy. And the mere labeling of a judgment as "stipulated" did not concede Burnett's liability. It would make no sense to find the issue of Burnett's liability unappealable after she contested it through a full trial on the merits even though she agreed to the amount of potential damages.

Accordingly, we hold that the trial court's stipulated judgment is appealable with respect to Burnett's liability.

B.      SUFFICIENCY OF THE EVIDENCE

Burnett argues that the evidence was insufficient to support the jury's finding that Burnett substantially violated a material term of her lease agreement.[3] We agree.

1.      Legal Principles

We review a civil jury verdict for substantial evidence. *Guijosa v. Wal-Mart Stores, Inc.*, 144 Wn.2d 907, 915, 32 P.3d 250 (2001). Substantial evidence supports a jury's verdict if the record contains " 'a sufficient quantity of evidence to persuade a rational, fair-minded person of the truth of the premise in question.' " *Winbun v. Moore*, 143 Wn.2d 206, 213, 18 P.3d 576 (2001) (quoting *Canron v. Fed. Ins. Co.*, 82 Wn. App. 480, 486, 918 P.2d 937 (1996)). We

---

[3] Burnett does not argue on appeal that the evidence was insufficient to support the jury's conclusion that she committed the same breach after receiving the 10-day notice.

consider the evidence and draw all reasonable inferences in the light most favorable to the

verdict. *Gorman v. Pierce County*, 176 Wn. App. 63, 87, 307 P.3d 795 (2013).

Under the Residential Landlord Tenant Act (RLTA), chapter 59.18 RCW, a landlord may

evict a tenant only if there exists cause as prescribed by the statute. RCW 59.18.650. Relevant

here, RCW 59.18.650(2)(b) states that a landlord may evict a tenant when

> The tenant continues in possession after substantial breach of a . . . material term
> subscribed to by the tenant within the lease or rental agreement . . . *after the
> landlord has served written notice specifying the acts or omissions constituting the
> breach* and requiring, in the alternative, that the breach be remedied or the rental
> agreement will end, and the breach has not been adequately remedied by the date
> specified in the notice, which date must be at least 10 days after service of the
> notice.

(Emphasis added.)

RCW 59.18.650(6)(b) states that notice under the statute must "[i]dentify the facts and

circumstances known and available to the landlord at the time of the issuance of the notice that

support the cause or causes with enough specificity so as to enable the tenant to respond and

prepare a defense to any incidents alleged."

2. Analysis

Here, the 10-day notice identified only a single incident that occurred on March 25, 2023.

Under RCW 59.18.650(2)(b) and (6)(b), this means that Key had to prove that what Burnett said

to Guiel on March 25 – and no other acts – constituted a substantial breach of a material term of

the lease. As the trial court instructed the jury, none of Burnett's prior acts could be considered

as evidence of a breach of the lease on March 25.

Matison testified to the lease agreement and the lease agreement was admitted as an

exhibit, which contained the quiet enjoyment provision. Guiel testified that on March 25, 2023,

7

Burnett said, "Were you out there smoking?" and "Do you know what that does to you?" while gesturing towards her chest. RP at 96. That was the only evidence of a breach.

If Burnett's prior conduct could be considered, it is possible that Key could argue that Burnett's comments on March 25 *combined with her prior actions* were a substantial breach of the lease. Key could argue that she had engaged in harassment of other residents for an extended period of time. But Key did not include that conduct in its 10-day notice. Instead, Key relied solely on the March 25 comments.

Viewed in isolation, Burnett's statements – "Were you out there smoking?" and "Do you know what that does to you?" – were innocuous. And there was no evidence about Burnett's demeanor or tone of voice that could turn these innocuous statements into something more menacing. Even viewing the evidence in the light most favorable to Key, we conclude that these statements did not provide sufficient evidence to show a substantial violation of the quiet enjoyment provision in the lease.

Accordingly, we hold that there was insufficient evidence to support the jury verdict and the trial court's judgment must be reversed.

C.     ATTORNEY FEES ON APPEAL

Burnett requests attorney fees and costs on appeal under RAP 18.1(a) and the RLTA. RAP 18.1(a) permits this court to award attorney fees "If applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before either the Court of Appeals or Supreme Court." The RLTA authorizes a prevailing party to recover attorney fees. RCW 59.18.290(1)-(2). And the lease between the parties specifically authorizes a prevailing party to recover costs and reasonable attorney fees on trial and "upon any appeal." CP at 10.

Here, because we are reversing based on insufficient evidence, Burnett is the prevailing party on appeal. We award Burnett her reasonable attorney fees associated with bringing its appeal as the prevailing party.

CONCLUSION

We reverse the trial court's judgment, and we remand for the trial court to vacate the judgment and dismiss Key's unlawful detainer complaint.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
CRUSER, C.J.

_____
GLASGOW, J.